## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| YOLANDA ESPOSITO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | No. 02-2078-KHV |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

Yolanda Esposito brings suit against the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 through 2680, for the wrongful death of her husband, Raymond Elio Esposito.  Specifically, plaintiff claims that while Mr. Esposito was incarcerated at the United States Penitentiary in Leavenworth, Kansas ("USP"), defendant failed to provide adequate medical care, causing Mr. Esposito to suffer pain and suffering and premature death.  This matter comes before the Court on Defendant's Motion For Summary Judgment (Doc. #32) filed July 22, 2004.  For reasons set forth below, the Court finds that defendant's motion should be sustained.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

### Factual Background

The following facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiff.

Raymond E. Esposito was incarcerated at USP after his conviction on a 1994 indictment. Staff at the USP cardiac care clinic routinely prescribed medication for Mr. Esposito and monitored his heart

2

condition.   From January 7, 1998, through July 21, 1998, Mr. Esposito visited the USP clinic approximately 11 times for prescriptions and monitoring of medications.  On August 19, 1998, Mr. Esposito reported nausea for the past 24 hours with some vomiting.  A lab test showed digoxin toxicity.[1]  On August 20, 1998, Mr. Esposito received intravenous fluids because of dehydration due to nausea and vomiting and digoxin intoxication.  By August 25, 1998, however, Mr. Esposito had  fully recovered from digoxin and coumadin toxicity.

From September 17 through September 21, 1998, the USP clinic saw Mr. Esposito for shortness of breath and difficulty breathing.   Thereafter he continued to receive treatment at the clinic for congestive heart failure and edema.  On October 31, 1998, Dr. Phillip K. Hill prepared a form which requested a "routine-urgent medical transfer" of Mr. Esposito to the Medical Center for Federal Prisoners at Springfield, Missouri.

On November 10, 1998, the USP clinic saw Mr. Esposito for cardiac and liver toxicity.   On November 23, 1998, an addendum to the referral request stated that Mr. Esposito had been hospitalized at St. John Hospital in Leavenworth on November 20, 1998 for increasing dsypenea, cardiac arrythemias and chest pain.  The USP medical team determined that the USP was not a suitable placement for Mr. Esposito because he needed more in-depth medical evaluation and a multi-disciplinary team approach for treatment.

On January 17, 1999, Mr. Esposito was hospitalized at St. John Hospital for re-hydration.  On January 25, 1999, Mr. Esposito was transferred to the Springfield Medical Center for Federal Prisoners. By that time, Mr. Esposito had an estimated life expectancy of less than six months.  Shortly after

---

[1]        Digoxin is a drug which strengthens heart muscle and corrects an irregular heartbeat.

February 10, 1999, the facility provided Mr. Esposito a hospice companion for emotional support in the dying process. On March 12, 1999, Mr. Esposito died.

Sometime thereafter, someone submitted an administrative claim to the Federal Bureau of Prisons ("BOP") under 28 U.S.C. § 2401(b).[2] See Complaint ¶ 4. On August 23, 2001, the BOP denied the administrative claim. On February 22, 2002, plaintiff's counsel filed the complaint in this action.

On October 16, 2002, defendant filed a motion to dismiss due to lack of subject matter jurisdiction, alleging that the Court did not have subject matter jurisdiction over any claim by Mr. Esposito's estate, because the estate did not file an administrative claim and therefore had not exhausted administrative remedies under the FTCA. This Court agreed, and ordered plaintiff to show cause why the Court should allow plaintiff's wife to substitute herself as the real party in interest under Rule 17(a), Fed. R. Civ. P. On May 21, 2003, the Court found that the plaintiff was incorrectly named due to an honest but unreasonable mistake, and therefore dismissed the case. On appeal, the Tenth Circuit reversed and remanded to allow Yolanda Esposito to be substituted as the proper plaintiff. See Esposito v. United States, 368 F.3d 1271, 1274 (10th Cir. 2004).[3]

_____

[2]    The record does not reveal the date of the claim or who submitted it. The complaint states that plaintiff submitted the claim, but plaintiff was deceased at the time.

[3]    In ruling on the appeal, the Tenth Circuit stated in part as follows:

. . . [T]he United States argues that substitution should be denied because it has been prejudiced. The typical grounds for prejudice are absent, since the United States had actual notice of Mrs. Esposito's claim against it once she filed an administrative tort claim. The United States relies instead on the delay caused by Mrs. Esposito's failure to move for substitution earlier in the action and it points, inter alia, to plaintiff's failure to provide discovery and to designate an expert witness on medical care issues. Nothing in our decision should be viewed as prohibiting the United States from raising these issues or as prohibiting the district court from taking appropriate

(continued...)

4

On October 18, 2002, the Court entered a joint scheduling order in this case. See Doc. #9. The scheduling order required plaintiff and defendant to supply initial disclosures required by Rule 26(a)(1), Fed. R. Civ. P. The United States provided the initial disclosures, see Doc. #13, but plaintiff did not. Further, plaintiff did not disclose expert medical reports or designate an expert witness by February 3, 2003, as required by the scheduling order. Moreover, plaintiff did not disclose any expert witness report by February 20, 2003, as required by the scheduling order.

Defendant has produced the expert opinion of Dr. William B. McCollum, M.D., that the United States did not deviate from any standard of care or cause injury to Mr. Esposito.

### Analysis

Defendant asserts that it is entitled to summary judgment because plaintiff has no evidence that defendant breached a duty of care or that any alleged breach caused injury to Mr. Esposito.

The FTCA constitutes a limited waiver of sovereign immunity for the United States and, with certain exceptions, renders the federal government liable in tort as a private person would be in like circumstances. 28 U.S.C. § 1346(b) (limited waiver of sovereign immunity for damages caused by negligent or wrongful act or omission of any employee). The FTCA claim is controlled by the substantive law of the place where the act or omission occurred. See Naceesa v. United States, 309 F.3d 722, 725 (10th Cir. 2002) (in FTCA medical malpractice case, United States liable for its tortuous conduct in same manner and to same extent as private person liable in accordance with law of place where act

---

[3](...continued)
action in response to them. Nor do we hold that substitution should relieve plaintiff of any deadlines previously established in this case. These are matters to be considered on remand by the district court.

368 F.3d at 1278.

occurred); Mass. Bonding & Ins. Co. v. United States, 352 U.S. 128 (1956).  The parties agree that the substantive law of Kansas applies in this case.

Under Kansas law, to recover for negligence,  plaintiff must prove a duty, a breached of duty and a causal connection between the breach and the injury suffered. Davey v. Hedden, 260 Kan. 413, 426, 920 P.2d 420, 429 (1996) (citing Nero v. Kan. State Univ., 253 Kan, 567, 571, 861 P.2d 768, 772 (1993)).  The breach of duty must be the actual and proximate cause of the injury.  Id. (citing Baker v. City of Garden City, 240 Kan. 554, 557, 731 P.2d 278, 280 (1987);  Dietz v. Atchison, Topeka & Santa Fe R.R.Co., 16 Kan. App.2d 342, 347-48, 823 P.2d 810, 815-16 (1991)).

A claim of medical malpractice requires the same elements of proof as any negligence action. Hare v. Wendler, 263 Kan. 434, 440, 949 P.2d 1141, 1145 (1997) (citing Sharples v. Roberts, 249 Kan. 286, 294, 816 P.2d 390, 397 (1991)).  "In order to prevail in a medical malpractice action in Kansas, a plaintiff must prove the following three elements: '(1) that a duty was owed by the physician to the patient; (2) that the duty was breached; and (3) that a causal connection existed between the breached duty and the injury sustained by the patient.'"  Heany v. Nibbelink, 23 Kan. App.2d 583, 586, 932 P.2d 1046, 1048 (1997) (quoting Wozniak v. Lipoff, 242 Kan. 583, 587, 750 P.2d 971, 975 (1988)).

The Kansas Supreme Court has described plaintiff's duty to show causation in medical malpractice cases: "there must be a causal connection between the negligent act and the injury or that the act caused or contributed to the injury."  Hare, 263 Kan. at 440, 949 P.2d at 1145 (citing Sharples, 249 Kan. at 295, 816 P.2d at 397).

> Negligence is never presumed, and may not be inferred merely from a lack of success or an adverse result from treatment.  The plaintiff in a medical malpractice case bears the burden of showing not only the doctor's negligence, but that the negligence caused the injury.  Except where the lack of reasonable care or the existence of proximate cause is apparent to the average layman from common knowledge or experience, expert

testimony is required in medical malpractice cases to establish the accepted standard of care and to prove causation.

<u>Bacon v. Mercy Hosp. of Ft. Scott</u>, 243 Kan. 303, 307, 756 P.2d 416, 420 (1988).

Defendant asserts that it is entitled to summary judgment because plaintiff can provide no expert testimony that it deviated from the applicable standard of care or caused any injury to Mr. Esposito. Defendant points out that plaintiff has not (1) disclosed any expert medical reports; (2) designated an expert witness; or (3) disclosed any expert witness reports. The deadlines for doing so are well past.[4] Plaintiff does not seek additional time to obtain expert testimony. Rather, she asserts that she is entitled to prove negligence under the "common knowledge exception" to the general rule requiring expert testimony to establish the elements of a medical negligence case.

The common knowledge exception applies if what is alleged to have occurred in the diagnosis, treatment and care of a patient is so obviously lacking in reasonable care and the results are so bad that the lack of reasonable care would be apparent to and within the common knowledge and experience of a lay person. As plaintiff acknowledges, however, Kansas appellate courts have not applied the common knowledge exception where actual medical expertise is required to show breach or causation. <u>See</u>, <u>e.g.</u>, <u>Heany</u>, 23 Kan. App.2d at 586, 932 P.2d at 1048 (plaintiff suffered postpartum bleeding and physician unsure of cause); <u>Sharples</u>, 249 Kan. at 294, 816 P.2d at 397 (plaintiff alleged he lost kidney because of

---

[4] On October 18, 2002, the Court entered a joint scheduling order in this case. <u>See</u> Doc. #9. The scheduling order required plaintiff and defendant to supply initial disclosures required by Rule 26(a)(1), Fed. R. Civ. P. Discovery deadlines are to be taken seriously and strictly followed. <u>See</u> <u>Rios v. Bigler</u>, 847 F. Supp. 1538, 1550 (D. Kan. 1994). Defendant provided the initial disclosures, <u>see</u> Doc. #13, but plaintiff did not. Further, plaintiff did not disclose expert medical reports or designate an expert witness by February 3, 2003 as required by the scheduling order. Finally, plaintiff did not disclose any expert witness report by February 20, 2003, as required by the scheduling order.

doctor's failure to perform tests or refer to urologist; court found that he did not establish that earlier diagnosis and treament would have resulted in better outcome).  The exception must be applied on a case-by case basis.

Plaintiff claims that Mr. Esposito suffered injury on account of defendant's three-month delay in implementing the transfer to Springfield.  Plaintiff asserts that if defendant had transferred Mr. Esposito earlier, he could have received treatment which would have increased his life expectancy or chances of survival.  Plaintiff contends that common knowledge and experience dictate that failure to obtain recommended medical treatment for a serious heart condition could result in or contribute to premature death.

If plaintiff could prove that failure to transfer Mr. Esposito did decrease his life expectancy or survival chances, she could recover.  Due to the complexity of plaintiff's medical condition, however, expert testimony is required to show a deviation from the standard of care.  Cunningham v. Riverside Health Sys., Inc., 33 Kan. App.2d 1, 3, 99 P.3d 133, 137 (2004).  Here, defendant has presented expert testimony that a transfer in October, 1998 would not have increased Mr. Esposito's life expectancy or chances of recovery from his terminal medical condition.  Plaintiff has produced no evidence to the contrary.  Further, plaintiff has produced no evidence that defendant's failure to transfer Mr. Esposito to Springfield in November 1998 caused him any injury.

Plaintiff asserts that she can recover under the doctrine of *res ipsa loquitur* – "the thing speaks for itself."  Kansas courts have set out three requirements to apply this doctrine:

> First, the thing or instrumentality causing the injury or damage must be within the exclusive control of the defendant.  Second, the injury must be of the kind that ordinarily would not occur in the absence of someone's negligence.  Third, the injury must not be due to the contributory negligence of plaintiff.

Savina v. Sterling Drug, Inc., 247 Kan. 105, 130, 795 P.2d 915, 933 (1990) (citing Arterburn v. St. Joseph Hosp. & Rehab. Ctr., 220 Kan. 57, 64, 551 P.2d 886, 892 (1976)). The doctrine applies in medical malpractice cases only if a lay person could find, as a matter of common knowledge, that the patient's condition was such that it would ordinarily not have occurred if defendant had exercised due care. Savina, 247 Kan. at 135, 795 P.2d at 936. Thus, in this context, the *res ipsa loquitur* doctrine requires the same analysis as the common knowledge exception. As discussed above, plaintiff has not presented any evidence from which a lay person could find as a matter of common knowledge that Mr. Esposito's decline and death would not have occurred if defendant had exercised due care. Rather, the undisputed evidence is that Mr. Esposito suffered severe heart and liver problems and was in a terminal stage of disease in the fall of 1998.

Because plaintiff has produced no evidence that defendant deviated from the standard of care, or that any such deviation caused injury to Mr. Esposito, defendant is entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #32) filed July 22, 2004 be and hereby is **SUSTAINED**.

Dated this 31st day of January, 2005, at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

9